IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


DEBRAH KAY ELIASON,

                    Plaintiff,

vs.                                    Case No. 17-1060-SAC


NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,

                    Defendant.


MEMORANDUM AND ORDER

    This is an action reviewing the final decision of the

Commissioner of Social Security denying the plaintiff disability

insurance benefits.  The matter has been fully briefed by the

parties.

## I.  General legal standards

    The court's standard of review is set forth in 42 U.S.C.

§ 405(g), which provides that "the findings of the Commissioner

as to any fact, if supported by substantial evidence, shall be

conclusive."  The court should review the Commissioner's

decision to determine only whether the decision was supported by

substantial evidence and whether the Commissioner applied the

correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984

(10th Cir. 1994).  Substantial evidence requires more than a

1

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If

the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the

claimant's age, education, and past work experience) and to

determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy.

Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of

the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th

Cir. 1993).   At step five, the burden shifts to the

Commissioner to show that the claimant can perform other work

that exists in the national economy.  Nielson, 992 F.2d at 1120;

Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).   The

Commissioner meets this burden if the decision is supported by

substantial evidence.  Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will

assess the claimant's residual functional capacity (RFC).  This

RFC assessment is used to evaluate the claim at both step four

and step five.  20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g);

416.920(a)(4), 416.920(e,f,g).

**II.  History of case**

On November 25, 2015, administrative law judge (ALJ) Alison

K. Brookins issued her decision (R. at 17-28).  Plaintiff

alleges that she has been disabled since August 31, 2013 (R. at

17).  Plaintiff is insured for disability insurance benefits

4

through September 30, 2017 (R. at 19).  At step one, the ALJ

found that plaintiff has not engaged in substantial gainful

activity since the alleged onset date (R. at 19).  At step two,

the ALJ found that plaintiff has severe impairments (R. at 19).

At step three, the ALJ determined that plaintiff's impairments

do not meet or equal a listed impairment (R. at 22).  After

determining plaintiff's RFC (R. at 22), the ALJ found at step

four that plaintiff is unable to perform past relevant work (R.

at 26).  At step five, the ALJ found that plaintiff could

perform other work that exists in significant numbers in the

national economy (R. at 27-28).  Therefore, the ALJ concluded

that plaintiff was not disabled (R. at 28).

**III.  Did the ALJ err in her consideration of the opinions of**

**Dr. Whitmer regarding plaintiff's migraine headaches?**

On November 19, 2013, Dr. Whitmer performed a consultative

examination on the plaintiff (R. at 347-351).  In his report, he

discussed in some detail plaintiff's allegations and

neurological reports regarding plaintiff's headaches (R. at 349-

350).  He diagnosed intractable migraine headaches (R. at 351).

On September 10, 2014, Dr. Whitmer filled out an RFC

questionnaire indicating that plaintiff, because of muscle and

joint pain and headaches, could sit, stand, and/or walk for only

five minutes at a time during an 8 hour workday; would need to

shift positions at will from sitting, standing, or walking; and

would need to take numerous unscheduled breaks during the
workday (R. at 386-387).

The ALJ stated that Dr. Whitmer's opinions are not
consistent with the record, are conclusory, and are not
supported with an explanation.  The ALJ further noted that Dr.
Whitmer indicated on the RFC form that he had treated plaintiff
for 10 years (R. at 386), but the ALJ indicated that there is no
evidence of any treatment or examination records prior to
November 19, 2013.  The ALJ also noted that plaintiff did not
allege headaches as an impairment at the hearing.  The ALJ gave
little, if any, weight to his opinions (R. at 26).  The ALJ gave
great weight to the opinion of Dr. Coleman, a non-examining
consulting physician (R. at 26).

The ALJ never acknowledged that Dr. Whitmer was a treating
physician for the plaintiff.  The ALJ noted that plaintiff
performed a consultative examination (R. at 24), and later
indicated that she considered the opinions of Dr. Whitmer (R. at
26).  The ALJ never mentioned the fact that Dr. Whitmer,
subsequent to the November 19, 2013 examination, treated
plaintiff on nine occasions, on December 18, 2013, March 18,
2014, May 2, 2014, June 12, 2014, December 8, 2014, March 4,
2015, June 1, 2015, June 12, 2015, and June 15, 2015 (R. at 355,

6

368, 438, 434, 431, 449, 492, 488, 469).[1]  On eight of those

occasions, the medical record stated that plaintiff had

migraines-virdigo [sp?] very bad (R. at 433, 436, 440, 357, 363,

371, 451, 490).  She was treated for severe migraine headaches

on June 12, 2014 (R. at 436).  On June 15, 2015, Dr. Whitmer

indicated that neurologically she does have a lot of problems

with headaches (R. at 470), and gave an impression of chronic

migraine headaches (R. at 471).  Plaintiff was also seen on June

12, 2015 for a headache (R. at 489).  Thus, although there is no

evidence that Dr. Whitmer treated or examined her prior to

November 19, 2013, the evidence clearly shows that Dr. Whitmer

treated her on numerous occasions after that date.  The

treatment records repeatedly diagnose migraines; on some of

those occasions, he treated her for migraines or headaches.

However, the ALJ, in finding that migraine headaches were

not a severe impairment, made the following statement:

> **There are no functional limitations that**
> **have been imposed by any treatment provider**
> and no indication in the record that the
> claimant's history of migraine headaches or
> history of hypertension causes more than a
> minimal limitation upon the claimant's
> ability to perform basic work activities.

(R. at 20, emphasis added).  Plaintiff argues that this

statement by the ALJ is clearly erroneous (Doc. 12 at 8).

---

[1] On the March 18, 2014 visit, plaintiff was seen by another medical source as Dr. Whitmer was out of the office (R. at 370).

Following Dr. Whitmer's initial evaluation of plaintiff on November 19, 2013, the medical records clearly indicate that he was plaintiff's treatment provider and saw her on nine occasions between December 18, 2013 and June 15, 2015.  The statement that there are no functional limitations that have been imposed by any treatment provider because of plaintiff's migraine headaches is clearly erroneous.  Dr. Whitmer was plaintiff's treatment provider and Dr. Whitmer imposed physical limitations on plaintiff due to plaintiff's migraine headaches.

Furthermore, although the ALJ stated that Dr. Whitmer's RFC findings are conclusory, those findings must be considered in light of his November 19, 2013 evaluation and the extensive treatment records from December 2013 through June 2015.  The ALJ never acknowledged that Dr. Whitmer treated plaintiff from December 2013 through June 2015.  The ALJ only acknowledged that Dr. Whitmer saw plaintiff on June 1, 2015.  References to other medical treatment notes in 2015 make no mention of who plaintiff was seeing for medical care (R. at 24-25), and the ALJ makes no reference to the medical care that plaintiff received from Dr. Whitmer in 2013 and 2014 after the initial evaluation.

In the case of Winick v. Colvin, 674 Fed. Appx. 816, 819-821 (Jan. 4, 2017), the ALJ erred by considering one of the physicians as an examining source rather than a treating source. The ALJ mistakenly assumed that Dr. Ganzell had only examined

8

the claimant twice and had not treated him; however, the record

showed multiple treatment visits over an extended period of

time.   The court held as follows:

> Had the ALJ properly analyzed Dr. Ganzell's
> opinion as a treating rather than an
> examining physician's opinion, he would have
> been obligated to follow the procedure for
> weighing a treating physician's opinion. See
> Mays v. Colvin, 739 F.3d 569, 574 (10th Cir.
> 2014). This procedure requires the ALJ to
> "first consider whether the opinion is well-
> supported by medically acceptable clinical
> and laboratory diagnostic techniques" and
> "consistent with other substantial evidence
> in the record." Id. If the opinion does not
> meet either of these criteria, it is not
> entitled to controlling weight, but the ALJ
> must still give it deference and weigh it
> using the appropriate factors. Id.; see also
> 20 C.F.R. §§ 404.1527(c), 416.927(c)
> (identifying factors to be considered).
>
> The Commissioner argues that the ALJ's error
> was harmless because the ALJ provided
> reasons for discounting Dr. Ganzell's
> opinion that would have applied even if he
> had analyzed the opinion as a treating
> source opinion… But we cannot treat this
> error as harmless. To do so would ignore the
> ALJ's duties not only to determine whether
> to assign a treating physician's opinion
> controlling weight, but to give deference to
> a treating physician's opinion even if he
> does not assign it controlling weight. Mays,
> 739 F.3d at 574. The exercise of such
> deference might have changed the relative
> weight assigned to all the medical opinions,
> including the non-examining consultants to
> whose opinions the ALJ assigned great
> weight.
>
> Moreover, in assigning weight to a medical
> opinion, the ALJ is required to consider
> factors such as the frequency of treatment,

9

the length of the treatment relationship,
and the nature and extent of the treatment
relationship. See 20 C.F.R. §§
404.1527(c)(2)-(3), 416.927(c)(2)-(3). The
ALJ's analysis of these factors in this case
rested on a flawed premise. He mistakenly
assumed that Dr. Ganzell had only examined
Mr. Winnick twice and had not treated him
for his psychological impairments. But Dr.
Ganzell's psychotherapeutic relationship
with Mr. Winnick included multiple treatment
visits over an extended period of time… We
cannot repair the deficiencies in the ALJ's
analysis by inserting our own judgment
concerning Dr. Ganzell's treatment
relationship with Mr. Winnick. The weighing
of such factors is the ALJ's job, not ours.
See, e.g., Allen v. Barnhart, 357 F.3d 1140,
1145 (10th Cir. 2004) (court may supply
missing dispositive finding only where "no
reasonable administrative factfinder,
following the correct analysis, could have
resolved the factual matter in any other
way."). We must therefore remand to the
Commissioner for a proper analysis of Dr.
Ganzell's treating physician's opinion.

The court's holding in Winick governs the outcome of this

case.  The ALJ's finding that no functional limitations have

been imposed by any treatment provider because of migraine

headaches is clearly erroneous.  Dr. Whitmer was plaintiff's

treatment provider, and he opined that plaintiff had functional

limitations because of migraine headaches.  The court cannot

treat this error as harmless, for the reasons set forth in

Winick.  The court must therefore remand to the Commissioner for

a proper analysis of Dr. Whitmer's treating physician's opinions

and his extensive treatment notes.

When this case is remanded, the ALJ should also consider Dr. Whitmer's treatment notes regarding plaintiff's anxiety. This issue was discussed by Dr. Whitmer on December 18, 2013, May 2, 2014, and December 8, 2014 (R. at 357, 440, 432-433).  On May 2, 2014, Dr. Whitmer noted a history of chronic anxiety (R. at 440).  On December 8, 2014, Dr. Whitmer found plaintiff having a lot of depression and anxiety (R. at 432).  He diagnosed depression with anxiety which is not being controlled with medication (R. at 433).

**IV.  Did the ALJ err in her evaluation of plaintiff's credibility?**

Plaintiff has also asserted error by the ALJ in evaluating plaintiff's credibility.  The court will not address this issue because it may be affected by the ALJ's resolution of the case on remand after the ALJ considers the medical records and opinions of Dr. Whitmer as a treating source.  See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 18th day of April 2018, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge

11